UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CLEMENCIO McKOY, A28-981-203,

        Petitioner,

        -v-                                                      13-CV-409-JTC

ERIC H. HOLDER, Attorney General
of the United States;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;

Department of Homeland Security; and

TODD L. TRYON, Facility Director, Buffalo
Federal Detention Facility,

        Respondents.

---

## **INTRODUCTION**

Petitioner Clemencio McKoy, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered May 6, 2013 (Item 2), respondent[1] has submitted an

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition, and petitioner has submitted a reply (Items 6-8). For the reasons that follow, the petition is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Jamaica. DHS records reflect that petitioner entered the United States at New York City at an unknown place and time, without being inspected by an immigration official. *See* Item 4-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5. He alleges in his petition that he was brought to the United States by his father in 1971, when he was a young child. Item 1, ¶ 13.

DHS records further reflect that petitioner was convicted of the following criminal offenses while present in the United States:

    a.    On January 17, 1989, petitioner was convicted in Criminal Court, Queens County, New York, of Disorderly Conduct. For this offense, he was sentenced to 75 days incarceration.

    b.    On August 9, 1995, petitioner was convicted in New York State Supreme Court, Queens County, of Criminal Mischief in the 3rd Degree, and was granted a conditional discharge.

    c.    On April 19, 2004, petitioner was convicted in New York State Supreme Court, Queens County, of Robbery in the 3rd Degree. For this offense, he was sentenced to a prison term of 1 to 3 years. On that same date, petitioner was also convicted of Robbery in the 1st Degree: Displays

What Appears to be a Firearm. For this offense, he was sentenced to a prison term of 9 years.

 d. On December 1, 2005, petitioner was convicted in the Queens County Criminal Court, of Robbery in the 1st Degree: Displays What Appears to be a Firearm. For this offense, he was sentenced to a prison term of 10 years.

Item 4-1, ¶ 6; *see also* Item 4-2 (Exh. A to Payan Decl.), pp. 4, 12, 14.

On April 27, 2010, while incarcerated at the Downstate Correctional Facility, Fishkill, New York, in the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), petitioner was interviewed by a DHS officer assigned to the Criminal Alien Program Unit. Following confirmation of his immigration status, petitioner was placed in immigration removal proceedings by service of a Notice to Appear ("NTA"), dated July 26, 2010, which charged him with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)), as an alien who is present in the United States without being admitted or paroled; and pursuant to INA § 212(a)(2)(A)(i)(I) (8 U.S.C. § 1182(a)(2)(A)(i)(I)), as an alien who has been convicted of a crime involving moral turpitude. Item 4-1, ¶ 7; Item 4-2, pp. 10-12.

On October 20, 2011, an immigration judge ("IJ") ordered petitioner removed from the United States to Jamaica. Petitioner appealed this determination to the Board of Immigration Appeals ("BIA"), and on March 23, 2012, the BIA remanded petitioner's case back to the immigration court. Item 4-1, ¶ 9.

On September 5, 2012, IJ Roger Sagerman ordered petitioner removed from the United States to Jamaica. Item 4-2, p. 8. Petitioner reserved his right to appeal the IJ's

decision, but he did not file an appeal prior to October 5, 2012–the date on which the time allotted for appeal expired. *See id.*; *see also* Item 4-1, ¶ 10. As a result, the IJ's decision became the final order of removal as of October 5, 2012. *See* 8 C.F.R. § 1241.1(c) (order of removal becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

Meanwhile, upon his release from the custody of NYSDOCCS on September 18, 2012, petitioner was taken into DHS custody and detained at the Buffalo Federal Detention Facility in Batavia, New York. On or about October 5, 2012 (immediately after the IJ's removal order became final), DHS sent a presentation packet to the Consulate General of Jamaica ("Consulate") in New York City requesting that a travel document be issued for petitioner's removal. Item 4-2, p. 15; *see also* Item 4-1, ¶¶ 11-12.

On October 23, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. The warning form advised petitioner of penalties under INA § 243(a) for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), the statutory removal period may be extended if he failed to comply with the travel document application requirements. *See* Item 4-2, p. 7.

In accordance with immigration regulations, DHS reviewed petitioner's custody status in January 2013. On January 4, 2013, petitioner was notified that, based upon the totality of information available in his file, including his "criminal history show[ing] a wanton disregard for the laws of the United States …," DHS determined to continue his detention

-4-

because he "may pose a threat to the safety of the community and a flight risk if released at this time." Item 4-2, p. 5.

An additional review of petitioner's custody status was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") in February 2013. As part of that review, a panel was convened on February 2, 2013, at the Buffalo Federal Detention Facility to conduct an in-person interview of petitioner. Following completion of the file review and interview, petitioner was notified on April 5, 2013, that DHS determined to continue his detention in DHS custody. *Id.* at 2; *see also* Item 4-1, ¶¶ 18-19.

Petitioner filed this action on April 24, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-final removal order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens (like petitioner here) ordered removed due to conviction of a crime–beyond the expiration of the

ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must

order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner's removal order became final on October 5, 2012, upon expiration of the time allotted for an appeal of the IJ's September 5, 2012 decision. As an alien under a final order of removal, petitioner was subject to mandatory detention for the ninety-day removal period pursuant to INA § 241(a). Thereafter, petitioner's continued detention has been authorized by INA § 241(a)(6), since he is an inadmissible criminal alien who has been determined to be a risk to the community if released.

Under *Zadvydas*, detention during the first six months following a final removal order (here, from October 5, 2012 to April 5, 2013) is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146

("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to make a sufficient showing to sustain his initial burden under *Zadvydas*. Petitioner alleges that the Consulate has refused to issue travel documents for his removal because the Jamaican government cannot verify his nationality, notwithstanding his submission of valid birth registration documentation as well as his demonstrated good faith compliance in all other respects with the requirements set forth in Form I-229(a). According to petitioner, the Consulate's investigation of the matter has been limited to an unsuccessful attempt to contact petitioner's estranged mother to complete a Declaration of Identity. *See* Item 1-1, p. 16.

However, as discussed above, the records submitted to court reflect that DHS took steps immediately upon expiration of the time allotted for appeal of the IJ's removal order to secure a travel document for petitioner, and regular communications between the Jamaican Consulate's representatives and DHS staff have continued throughout the pendency of petitioner's detention. Specifically, DHS file notes relating to petitioner's case show that contact with representatives of the Consulate was attempted or made on several occasions during every month from October 2012 through May 2013, and the deportation officer assigned to petitioner's case has enlisted the assistance of the DHS Headquarters Travel Document Unit ("HQTDU") in an effort to facilitate the issuance of a travel document for petitioner. Item 4-1, ¶¶ 15-16. The file notes also indicate that, in addition to the attempt to contact petitioner's mother, the Consulate has forwarded petitioner's case file

to Kingston, Jamaica, for further assistance in establishing petitioner's nationality, and a Consulate representative interviewed petitioner by telephone on October 9, 2012. *Id.*

In addition, the available statistical evidence reveals that DHS has successfully repatriated significant numbers of aliens to Jamaica in recent years, indicating no inherent institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3; Item 4-1, ¶ 21.

Considered in their totality, these circumstances provide a reasonable basis for DHS's expectation that the verification of petitioner's nationality required for the issuance of a travel document by the Jamaican government can be accomplished within the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica. Accordingly, the court finds that petitioner has failed to establish a good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See, e.g., Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-final removal order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: September 11, 2013
p:\pending\2013\13-409.2241.sept10.2013